198 N.J. Super. 474 (1985)
487 A.2d 772
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
STANLEY A. MATULEWICZ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 9, 1984.
Decided February 5, 1985.
*475 Before Judges KING, DEIGHAN and BILDER.
Shamy & Luke, attorneys for appellant (George J. Shamy, Jr., of counsel; George J. Shamy, Jr. and Barbara Coles Bolella, on the brief).
Joseph A. Falcone, Passaic County Prosecutor, attorney for respondent (John C. Berndt, Assistant Prosecutor, of counsel and on the brief).
The opinion of the court was delivered by KING, P.J.A.D.
In this case we must decide if a State Police chemist's laboratory report identifying a controlled dangerous substance (marijuana) may be admitted into evidence as a report of a public official where the chemist who analyzed the substance was not produced as a witness. The Municipal Court judge decided that the report was admissible as a public record in a prosecution for possession of marijuana, as a disorderly person's offense under N.J.S.A. 24:21-20(a)(4) and (b). The Law Division judge agreed at the trial de novo on the record in the Superior Court. R. 3:23-8. We disagree with these rulings, reverse the conviction, and remand for a new trial. We conclude that the hearsay exception in Evid.R. 63(15)(a) was not a proper basis for admitting this crucial hearsay evidence where the forensic chemist did not testify.
Defendant was accused of smoking marijuana in public while waiting in line to enter a night club in Clifton on March 6, 1982. *476 The police seized the suspect's cigarette after defendant allegedly dropped it on the ground. He claimed that a stranger handed him the cigarette just before the police approached him. On March 10 the alleged marijuana cigarette was taken to the State Police Laboratory for analysis. On June 28 it was returned to the Clifton Police Department unanalyzed. The cigarette was later resubmitted to the Laboratory on October 4 and returned to the Police Department on October 8 with the chemist's positive report.
When the "drug analysis result" report was offered in evidence in the municipal court defendant's counsel timely objected. R. 1:7-2. The municipal court judge overruled the objection to the chemist's report on the basis of a then-recent decision of the Law Division in State v. Malsbury, 186 N.J. Super. 91 (Law Div. 1982). Contra, State v. Kraft, 134 N.J. Super. 416 (Cty.Ct. 1975). On the appeal to the Law Division appellant was again found guilty; that judge found the laboratory report admissible hearsay under Evid.R. 63(15)(a)  "Reports and Findings of Public Officials" as construed by Malsbury.[1]
We agree with defendant's contention that the Evid.R. 63(15) does not justify admission of the State Police Laboratory report in this criminal case. That rule states
Subject to Rule 64, a statement is admissible if in the form of (a) a written statement of an act done, or an act, condition or event observed by a public official if it was within the scope of his duty either to perform the act reported or to observe the act, condition or event reported and to make the written *477 statement, or (b) statistical findings made by a public official whose duty it was to investigate the facts concerning the act, condition or event and to make statistical findings.
Evid.R. 64 requires that the proponent must make known in advance the intention to offer a written statement pursuant to Evid.R. 63(15) in order to provide an adverse party "with a fair opportunity to prepare to meet it." This was not done by the municipal prosecutor but even if he complied with Evid.R. 64 our decision would not differ.
As stated, under Evid.R. 63(15)(a) a public official's statement is admissible if it is a written statement of "an act done, or an act, condition or event observed by a public official, if it is within the scope of his duty either to perform the act reported or to observe the act, condition or event reported and to make the written statement." Under Evid.R. 63(15)(b) "statistical findings" are also admissible. The rationale of these exceptions to the hearsay rule is reportedly twofold
(1) the special trustworthiness of official written statements is found in the declarant's official duty and the high probability that the duty to make an accurate report has been performed, State v. Hudes, 128 N.J. Super. 589 (Cty.Ct. 1974); 5 Wigmore, Evidence § 1632 (Chadbourn rev. 1974), and (2) to avoid the necessity of compelling a public official to leave his daily functions to testify as to an event which he will most likely not remember. Id. at § 1631. [N.J.Rules of Evid. (Anno. 1984), Comment 1 to Evid.R. 63 (15)].
We cannot agree that Evid.R. 63(15)(a) is an appropriate shortcut for law enforcement officials which eliminates the need to present the testimony of forensic chemists in drug prosecutions. Here we are not concerned with routine observations of acts, conditions or events observed or recorded by presumably neutral public officials. We are concerned here with the examination and evaluation of crucial evidence against a defendant made after the commencement of a criminal prosecution and for use in that prosecution. The marshalling, evaluation, and presentation of evidence is the major step in the adversarial process of criminal prosecution. Simply because this is the daily business of the prosecutor, the police officer, or the forensic chemist, does not bring this within the "official observations" exception found in Evid.R. 63(15)(a). The special *478 trustworthiness and expediency rationales for this hearsay exception are not sufficient to overcome the State's traditional duty in a criminal prosecution to prove every element of the offense beyond a reasonable doubt by competent evidence. See State v. Ingenito, 87 N.J. 204, 210-217 (1981), where Justice Handler stated that in criminal cases the "fact-finding function is all inclusive and encompasses the evaluation of the credibility of witnesses and the weight and worth of evidence." Id. at 211. In Ingenito the Court held that application of the doctrine of collateral estoppel could not be used to spare the State of its duty to prove an element of the offense. Here we conclude that the report of a forensic investigator, offered without any foundation testimony, also "constitutes an invasion of the ... ultimate decisional function." Id. at 213.[2]
Judge Conford reviewed in detail the history of the problem of the admission of facts and conclusions derived by official investigators in Phillips v. Erie Lackawanna R.R. Co., 107 N.J. Super. 590 (App.Div. 1969), certif. den. 55 N.J. 444 (1970). In that case we held that the factual conclusions of a hearing examiner of the public utility commissioners relating to a supposedly hazardous grade crossing and the Board's decision and order directing installation of protective lights and bells were hearsay and were not admissible under Evid.R. 63(15) relating to reports and findings of public officials in a civil damage action arising out of a grade-crossing accident. As *479 Judge Conford so precisely noted, "[t]he broad subject of admissibility of official statements containing factual conclusions derived from investigatory proceedings has constituted a controversial area in the law of evidence and has evoked differing points of view." Id. at 594. Judge Conford also pointed up that where "reports by officials [have been] offered under the business records exception to the hearsay rule [Evid.R. 63(13)] our courts have taken a rather cautious approach in respect of admissibility of conclusionary data contained in such reports," ibid., citing Brown v. Mortimer, 100 N.J. Super. 395, 405 (App.Div. 1968); Rogalsky v. Plymouth Homes, Inc., 100 N.J. Super. 501, 506 (App.Div. 1968), certif. den. 52 N.J. 167 (1968). Cf. Fagan v. City of Newark, 78 N.J. Super. 294, 316-318 (App.Div. 1963).
The historical background of the adoption of Evid.R. 63(15) obviated the need to "enter into the policy debate" over the breadth of admissibility of official conclusions in this context. Id. 107 N.J. Super. at 595. This historical background "demonstrate[d] clearly the intent of the drafters not to allow in evidence conclusionary material resulting from official investigations embodied in statements or reports of the official or agency involved." Ibid. A review of the process of development of our present Evid.R. 63(15) makes very clear, as described by Judge Conford, id. at 595-599, that our rules have definitely rejected the proposal in the Uniform Rules of Evidence that official investigatory conclusions should be included as admissible hearsay. As he observed, the deliberative and drafting process precedent to adoption constituted an "outright desertion of the principle of admissibility of all investigatory findings or conclusions and a reversion to the limitation to statistical findings" only. Id. at 598. Judge Conford concluded his detailed analysis in Phillips by remarking on the "unmistakable intent to exclude from evidence factual findings or conclusions, aside from statistical findings, by official investigatory bodies, insofar as admissibility is posited upon the exception to the hearsay rule constituted by Rule 63(15)." Id. at 599. *480 In the case before us, the State's chemist's report of his quantitative and qualitative analysis of the alleged dangerous substance is obviously beyond the narrow admissible class of official investigatory findings, i.e., "statistical findings," allowed by the exception.
The Comments in the Report of the New Jersey Supreme Court on Evidence 191-192 (March 1963) are also illuminating. The Committee recommended that the Supreme Court adopt a version of 63(15) which permitted the admissibility into evidence in civil proceedings of written reports and findings of facts resulting from investigations conducted by public officials in a proposed subsection (c)[3]. Id. at 189. This recommendation, as we know, was not adopted by the Supreme Court in the final 1967 version. The Committee clearly did not wish to extend this liberalizing proposal to criminal proceedings. The Committee's Report to the Supreme Court stated
It should be noted that Rule 63(15)(c) as proposed here is not applicable to criminal cases. Legal scholars who have endorsed Rule 63(15)(c) have in almost all instances cited civil cases as support. On the other hand, Professor Wallace, supra, at 272, points out that the constitutional right to confrontation of witnesses should not prevent such an expansion of hearsay exceptions. See People v. Love, 310 Ill. 558, 142 N.E. 204 (1923) to that effect, But see the arguments made by Professor Quick, discussed in the Comment on Rule 63(4), regarding the constitutional right to confrontation and cross-examination of witnesses. It would appear that too much hearsay which might be considered unreliable could be included in reports of law enforcement officers investigating crimes. An exception such as this could undermine the classic right of cross-examination of witnesses. The stakes involved in criminal cases and our traditional concern for confrontation in such cases warrant additional safeguards and protections not necessarily justified in civil cases. In criminal cases, where possible, the witnesses should appear and give viva voce testimony *481 subject to cross-examination. Shortcuts needed in civil litigation may be inappropriate here. [Id. at 192].
Judge Botter also touched on the issue, in addition to considering Confrontation Clause problems, in State v. Moore, 158 N.J. Super. 68, 77-78 (App.Div. 1978), a prosecution for obtaining unemployment compensation by false representations. In respect of admissibility of Unemployment Division records derived from defendant's employer's business records, he required proof that the employer's record "were themselves business records which satisfied Evid.R. 63(13) before excerpts from those records were to be admitted as part of the business records of the Unemployment Division or as part of a report of a public official admissible pursuant to Evid.R. 63(15)." Id. at 77. The crucial exhibit in Moore ultimately was analyzed and rejected as secondary evidence of business records (Evid.R. 70) under § 63(13) "to avoid the problems raised by viewing it as a report of an investigating agent," id. at 78, obviously a more suspect category for constitutional purposes in a criminal case. Here we cannot avoid the problem because the forensic chemist's report was part of the preparation of the prosecution's case, although obviously a routine business record so far as the State Police crime laboratory was concerned.
The problem of admissibility of reports of official criminal investigations is to be distinguished from that of reports of objective data gathered by public officials or business records of private entities. In State v. Kalafat, 134 N.J. Super. 297, 301 (App.Div. 1975), we upheld admission under Evid.R. 63(15) of the certificate of the Deputy Superintendent of the Division of Weights and Measures verifying a marked and measured one-half-mile course used to check the radar in a Vascar speeding prosecution. There we said that "the inherent trustworthiness of a report of an unchanging fact by a disinterested public official overcomes the usual barrier to its admissibility because of hearsay." In State v. Martorelli, 136 N.J. Super. 449 (App. Div. 1975), certif. den. 69 N.J. 445 (1976), we upheld the admissibility of a private hospital's laboratory report of a blood alcohol content test under the business entries exception to the hearsay *482 rule, Evid.R. 63(13), in a drunken driving prosecution. The blood had been tested by the toxicology laboratory of the hospital which then provided the report to the police.
The certification of a state trooper that he inspected a breathalyzer instrument on a particular day and found it working properly is an admissible report of a public official under Evid.R. 63(15). State v. McGeary, 129 N.J. Super. 219, 227. (App.Div. 1974). The police officer actually performing the breath test usually testifies to the results of the test on a particular defendant. See State v. Johnson, 42 N.J. 146, 171-172 (1964); See also Romano v. Kimmelman, 96 N.J. 66, 82 (1984)[4].
*483 The result we reach here is consistent with the result under the Federal Rules of Evidence which clearly exclude as hearsay a report of the factual findings of forensic and other experts, in criminal cases where the expert does not testify. Fed.R.Evid. 803(8)(B) excludes as hearsay in criminal cases reports and statements by police officers and other law enforcement personnel which set forth "factual findings resulting from an investigation made pursuant to authority granted by law, ..." See United States v. Oates, 560 F.2d 45, 65-69 (2nd Cir.1977); United States v. Ruffin, 575 F.2d 346, 356 (2nd Cir.1978); United States v. Perlmuter, 693 F.2d 1290, 1294 (9th Cir.1982). Cf., United States v. Marshall, 532 F.2d 1279, 1285 (9th Cir.1976) (report of forensic chemist admitted as past recollection recorded where chemist a witness but had no independent recollection).
In view of our conclusion on the scope of Evid.R. 63(15)(a) we need not consider the Confrontation Clause contention of appellant. We disapprove the opinion of the Law Division in State v. Malsbury, supra, for the reasons given. Evid.R. 63(15) was never intended to permit the State to prove the results of a forensic chemical analysis, or of any other investigative fact-finding prepared for a specific criminal prosecution to establish an element of the offense, by simply offering into evidence a laboratory report or some other written statement as the sole evidence on the point. The Prosecutor urges that great inconvenience may result to the State from a ruling adverse to his position. We disagree. Most cases are adjudicated on guilty pleas. Except in the few cases where the nature of the laboratory sample truly is in doubt, competent and experienced defense counsel usually stipulate to the contents of the State *484 police laboratory report rather than waste public resources and the courts' time.
Reversed and remanded for new trial.
NOTES
[1] As we construe this record, no effort was made to introduce the laboratory report pursuant to the conditions of Evid.R. 63(13)  "Business entries." Under the definition section, Evid.R. 62(5), "business" includes governmental activity. For admissibility of "business entries" in criminal and quasi-criminal cases see State v. Lungsford, 167 N.J. Super. 296 (App.Div. 1979); State v. McGee, 131 N.J. Super. 292 (App.Div. 1974); State v. Vogt, 130 N.J. Super. 465 (App.Div. 1974). We seriously doubt that the "business entry" exception was intended to permit use of hearsay reports of criminal investigations alone to establish proof of elements of the crime. See Report of the New Jersey Supreme Court Committee on Evidence 177-178 (March 1963).
[2] See also State v. Campisi, 23 N.J. 513, 519-520 (1957), where our Court said

The legal fact that a violation of N.J.S. 2A:170-8 results only in a conviction as a disorderly person rather than a conviction for a high misdemeanor or a misdemeanor is no reason for laxity in the procedure or a lowering of the quality and safeguards as to the proof of the essential element of the charge.
It is a laudable purpose of the State to rehabilitate such unfortunate persons, but it is no excuse for such laxity to say that the rehabilitation of such defendant may result from his conviction of this minor offense. The answer to that is that a conviction of a defendant on a complaint unsupported by essential proofs is a deprivation of his liberty by a trespass on his constitutional rights.
[3] The rule proposed by the Committee was: "Subject to Rule 64, written reports or findings of fact made by a public official of the United States or of a state or territory of the United States, other than officials acting in a judicial or quasi-judicial capacity, if the judge find that the making thereof was within the scope of the duty of such official and that it was his duty (a) to perform the act reported, or (b) to observe the act, condition or event reported, or (c) in a civil proceeding, to investigate the facts concerning the act, condition or event and to make findings or draw conclusions based on such investigation." (Emphasis added).
[4] By a 4-3 majority, the North Carolina Supreme Court upheld, against a Confrontation Clause challenge, a specific state statute that permitted introduction into evidence in a DWI case of a breath test result by affidavit, without testimony by the officer who performed the breath test for alcohol content. State v. Smith, 312 N.C. 361, 323 S.E.2d 316 (1984). The majority found the affidavit sufficiently reliable and expedient to justify an exception to the Confrontation Clause. The three-judge minority said

There are occasions when the confrontation rule must yield to exceptional circumstances. But the Confrontation Clause requires the state to produce any available witnesses whose declarations it seeks to use in a criminal trial. Also, relaxation of the Confrontation Clause requirements is more appropriate when the evidence to be offered does not address an essential issue in the case.
The affidavit as allowed by the statute in question is not a business or public record within the meaning of those exceptions. An affidavit purporting to show the essential gravamen of the charged offense  the defendant's alcohol concentration  is different from evidence such as the analyst's certificate of qualifications. The affidavit here was prepared for the specific purpose of being used by the state in the prosecution and trial of this defendant. Since the preparer does not have a position of neutrality with respect to the prosecution, there is clearly a reason to determine that such evidence does not bear the required indica of reliability.
The majority stresses the accuracy of the equipment and the slight opportunity the operator has to influence the test results. But critical evidence of a key element of an offense should never be admissible without compliance with the Confrontation Clause, regardless of how reliable and accurate the evidence appears to be. [Id. at, 323 S.E.2d at 331]. Here, we do not reach the constitutional issue because we conclude that § 63(15)(a) does not create an exception for the State's experts' chemical analysis report.